IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| REPUBLIC BANK,<br><br>Plaintiff,<br><br>vs.<br><br>AMTEC PRECISION PRODUCTS, INC.,<br><br>Defendant,<br><br><br>vs.<br><br>MAZUMA CAPITAL CORPORATION,<br><br>Third-Party Defendant | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF AND THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 1:06-CV-112 TS |

This matter is before the Court on Plaintiff Republican Bank's and Third-Party Defendant Mazuma Capital Corporation's Motion for Summary Judgment.[1]

## I.  INTRODUCTION

This action is based upon claims of breach of contract and is based on several agreements entered into between Defendant AMTEC ("Defendant") and Third-Party Defendant Mazuma ("Mazuma").  Plaintiff Republican Bank ("Plaintiff") is the successor in interest to Mazuma.

---

[1]Docket No. 16.

1

On or about February 3, 2006, Defendant and Mazuma entered into a Master Lease Agreement No. MCC0909 ("MLA") in which Mazuma agreed to purchase certain equipment for Defendant's use in exchange for Defendant leasing the equipment from Mazuma.

In connection with the MLA, Defendant and Mazuma also entered into a Master Progress Payment Agreement ("PPA").  Under this latter agreement, prior to the commencement of the MLA, Defendant could request that Mazuma purchase and pay for certain property which would be subsequently leased to Defendant under the MLA.  In order to do this, under the PPA, Defendant was first required to complete, execute, and deliver to Mazuma a Partial Acceptance and Delivery and Approval of Payment Certificate ("Partial Acceptance Certificate").  Mazuma would then make payments—Progress Payments—against the purchase price for the property.[2]

Progress Payments were essentially treated as loans or credit under the PPA, subject to Progress Payment Charges—i.e. interest.  Any Progress Payment Charges were to be determined daily, in the amount of .04197 times the amount of the Progress Payments outstanding, divided by thirty.  The Progress Payment Charges would be paid monthly until Defendant executed and delivered to Mazuma the final Acceptance and Delivery Certificate required under the MLA (the "Final Acceptance Certificate" or "Final Acceptance") reflecting acceptance of all items of property to be included in the MLA.  After the Final Acceptance was executed and delivered by Defendant to Mazuma, the Progress Payment Charges would end and the Monthly Rental payments under the MLA would begin.  Under the PPA, if Defendant did not execute and deliver the Final Acceptance within ninety days after the first Progress Payment was made, Defendant

---

[2]In addition to addressing Progress Payments, the PPA and MLA also required that Defendant be responsible for all of its obligations with respect to such items of property described, including payment of sales taxes.  PPA, at ¶ 3; MLA, at § 7.

could consider the PPA and MLA breached, and Defendant, among other things, could be required to pay Mazuma an amount equal to all of the Progress Payments made to that point.

Mazuma began making Progress Payments in February of 2006, as per Defendant's requests.  A complete and undisputed listing of these payments are as follows:

| Vendor | Invoice | Date Advanced | Amount Advanced |
| --- | --- | --- | --- |
| Cincinatti Grinding | 50713 | June 5, 2006 | $138,000.00 |
| CGT | 50756 | June 5, 2006 | $138,000.00 |
| Aba Z&b, USA | 158-06 | April 19, 2006 | $59,945.60 |
| Aba Z&b, USA | 158-06 | March 1, 2006 | $419,619.20 |
| Aba Z&b, USA | 158-06 | April 19, 2006 | $119,891.20 |

The total of these Progress Payments equals $875,456.00.  On February 27, 2006, Mazuma and Plaintiff entered into a Sales and Assignment Agreement ("SAA") whereby Plaintiff was assigned the MLA and PPA.  It is undisputed that Defendant paid all Progress Payment Charges due to the period ending June 1, 2006—90 days after the first Progress Payment by Mazuma.  It is also undisputed that each Progress Payment Certificate indicated that, by submitting the Certificate, Defendant

> acknowledge[s] that [the] Certificate does not constitute a final Acceptance and Delivery Certificate as defined in the [MLA], and [Defendant] agrees to execute and deliver to [Mazuma] a final Acceptance and Delivery after all items of Property to be covered under Lease Schedule No. 61-01 dated February 3, 2006 have been delivered, received, properly installed, examined and tested and determined by Lessee to be in good condition and operating satisfactorily."[3]

On June 30, 2006, counsel for Defendant was given a notice of default by counsel for Mazuma which referenced Section 19(j) of the MLA.  Section 19(j) provides that Defendant

---

[3]Complaint, Ex. D.

3

could be in default because its financial position had materially changed. This notice was followed up by a demand letter from Mazuma's counsel. The substance of the letter was consistent with the former notice. On July 13, 2006, counsel for Defendant and Mazuma discussed the notice of default and demand letter, wherein Mazuma expressed its position that Final Acceptance had not been made.

Plaintiff brought this action claiming breaches of the abovementioned contracts by Defendant. Plaintiff now moves for summary judgment against Defendant and contends that Defendant did not execute the Final Acceptance within ninety days of the first Progress Payment, and therefore, owes Plaintiff the full amount of Progress Payments advanced. Plaintiff also alleges that, to date, Defendant has not paid certain Progress Payment Charges. Finally, Plaintiff seeks sales tax owed on certain property purchased as a result of Progress Payments, as per the PPA and MLA, as well as late charges under the MLA. Notably, Plaintiff currently holds a security deposit made by Defendant in the total amount of $218,864.

Defendant responds that it made the Final Acceptance within ninety days of the first Progress Payment. Defendant argues that Mazuma rejected Defendant's Final Acceptance and thereby breached the agreements and/or prevented Defendant from fulfilling its obligations. Accordingly, Defendant has brought a Third-Party Claim against Mazuma for breach of contract.

Mazuma joins in Plaintiff Republican Bank's Motion on the grounds that it did not prevent Final Acceptance.

## II.  DISCUSSION

### A.  Standard

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[4]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[5]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6]

"The elements . . . for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages."[7]

### B.  Final Acceptance & Repayment of Progress Payments

Plaintiff argues that Defendant never issued a Final Acceptance, thereby defaulting under the PPA and MLA, and that Defendant now owes the entire amount of Progress Payments made, i.e. $875,455.40.

Defendant argues that it issued the required Final Acceptance, within the 90 day deadline, on April 19, 2006.  More specifically, Defendant argues that the Partial Acceptance Certificate relating to the April 19, 2006 Progress Payment to Aba Z&b, USA was its Final Acceptance.

---

[4]Fed. R. Civ. P. 56(c).

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[6]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[7]*Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388.

Defendant further argues that the parties initially treated the Partial Acceptance Certificate as the Final Acceptance because Mazuma made the Progress Payment to Aba Z&b, USA, and sent Defendant an invoice for the sales tax on the equipment, which was only due under the MLA and not the PPA.  Accordingly, Defendant states that no Progress Payment Charges are owing because its Final Acceptance brought the MLA into effect, thereby replacing Progress Payment Charges under the PPA with Monthly Rental payments under the MLA.

Defendant further contends that by ultimately failing to accept its Final Acceptance, Mazuma prevented Defendant from performing, thereby excusing Defendant.  Defendant attempts to bolster this argument by emphasizing that Mazuma originally claimed default for an entirely different reason than lack of Final Acceptance.

The Court finds, as a matter of law, that Defendant did not make a Final Acceptance for several reasons.

First, the PPA requires that *all* items of property subject to the lease must be finally accepted.[8]  Defendant's argument that it issued the required Final Acceptance on April 19, 2006, entirely fails to account for property acquired as a result of the two June 5, 2006 Progress Payments.  At the hearing, Defendant argued that its actions on April 19, 2006 constituted partial acceptance of the MLA, thereby resulting in two separate leases—one for property accepted on and before April 19, and one for all property acquired thereafter.  The Court does not find that the contracts at issue provide for such partial acceptance and division of the leases, especially by the Defendant lessee.  At most, the MLA provides that each property *schedule* shall constitute a

---

[8]PPA, at ¶ 4.

separate lease.[9]  However, it is undisputed that all property in this action was subject to one schedule, in the absence of any action taken by Mazuma, the lessor.[10]

Second, and even assuming that the MLA could be divided in the manner Defendant advocates, the Court notes that each Partial Acceptance Certificate provided by Mazuma, including that which Defendant asserts constituted its April 19 Final Acceptance, expressly stated that it did not constitute a Final Delivery Certificate as defined in the MLA.[11]

Third, Defendant's argument that Mazuma prevented Defendant from performing is unconvincing.  Notably, Defendant agreed, through each Partial Acceptance Certificate, that it, and not Mazuma, had the obligation of executing and delivering to Mazuma a Final Acceptance Certificate after all items of Property to be covered under the MLA were delivered and approved of by Defendant.[12]  Defendant does not contend that Mazuma prevented Defendant from acquiring a Final Acceptance Certificate, only that Mazuma refused to accept what Defendant incorrectly asserts was the Final Acceptance Certificate.

Fourth, at no point does Defendant explicitly argue that the terms of the MLA, PPA, or Acceptance and Delivery Certificates are ambiguous.  Assuming, *arguendo*, that terms in the MLA, PPA or Acceptance and Delivery Certificates were inconsistent, each Acceptance and Delivery Certificate constituted a modification to the MLA or PPA, making the Acceptance and Delivery Certificate's terms on Final Acceptance those which would govern.

---

[9]MLA, at § 2.

[10]*See* Lease Schedule No. 61-01 to MLA, at ¶ 1.

[11]Docket No. 27, at Ex. P.

[12]*Id.*

Fifth, the Court finds unconvincing Defendant's argument that the parties to the agreements treated Defendant's April 19, 2006 Partial Acceptance as the Final Acceptance. Conduct of parties may modify an agreement,[13] but such conduct cannot stretch the contract beyond what the language will bear.[14]  Defendant's argument that Mazuma's two week position that Defendant had breached the MLA somehow constitutes conduct modifying what constituted Final Acceptance, or establishes the existence of an ambiguity or interpretation contrary to that asserted by Plaintiff, indeed stretches the language of the contracts, especially of the Acceptance and Delivery Certificates, beyond what they can bear.  Additionally, as discussed in more detail below, the fact that Mazuma sent invoices for state sales tax is irrelevant because this obligation was not exclusively set forth by the MLA, but is also found in the PPA.

Finally, the Court finds no merit to Defendant's arguments that Mazuma breached its obligations under the contracts.

Accordingly, the Court finds that, as a matter of law, Defendant had not made Final Acceptance as it was required to do.

### C.  Other Damages

#### 1.  Progress Payment Charges

Plaintiff argues that, absent Final Acceptance, Defendant owes Progress Payment Charges of: (1) $36,356.77 for Progress Payments covering the period from June 1, 2006 to July 1, 2006, and (2) $1,224.76 per day for each day after July 1, 2006 to the present, as per the formula set forth above.

---

[13]*E.g. Softsolutions, Inc. v. Brigham Young University*, 2000 UT 46, ¶ 33, 1 P.3d 1095; Restatement (Second) of Contracts § 235(e).

[14]Restatement (Second) of Contracts § 235(e) cmt.

Defendant makes two arguments in opposition to Plaintiff's claim for Progress Payment Charges. First, Defendant states that the amount claimed by Plaintiff is an invalid penalty under the Utah case of *Reed v. Armstrong*.[15] The *Reed* case held that

> In case of a contract for the payment of money simply, a stipulation to pay a fixed sum in default of performance will be regarded as an agreement for a penalty, and not as a covenant for liquidation damages. The reason for this rule is that for the nonpayment of money the law awards interest as damages, and hence, there is no difficulty in ascertaining the damages in such case and they cannot be regarded as unliquidated.

However, here, as Plaintiff correctly points out, the parties did not stipulate to pay a fixed sum in default of performance. Rather, the parties agreed upon the terms for the advance of money until the MLA commenced. In Utah, "parties to a lawful contract may agree upon any rate of interest for the loan or forbearance of any money, goods, or chose in action that is the subject of their contract."[16] Defendant need only to have provided a Final Acceptance at any time in order to avoid the Progress Payment charges that have accrued to date.

Second, Defendant argues that the Progress Payment Charges are substantively unconscionable. More specifically, Defendant contends that approximately $300,000 in Progress Payment Charges and almost $4000 in late charges are unconscionable when "only" $600,000 is owed.[17]

Under Utah law, "[a] party claiming unconscionability bears a heavy burden" as "[t]he law enables parties to freely contract . . . even permit[ting] parties to enter into unreasonable

---

[15]312 P.2d 777 (1957).

[16]Utah Code. Ann. § 15-1-1.

[17]Defendant's calculations take into account security deposits held by Plaintiff, as discussed in more detail below.

contracts or contracts leading to a hardship on one party."[18]  In order to be substantively

unconscionable, which Defendant claims here, a contract must be "so lopsided as to unfairly

oppress or surprise an innocent party."[19]  Furthermore, "[e]ven if a contract term is unreasonable

or more advantageous to one party, the contract, without more, is not unconscionable."[20]

The Court holds, as a matter of law, that the Progress Payment Charges, as set forth in the

PPA, are not unconscionable, and that Defendant has not met its heavy burden.  The Progress

Payment charges were clearly set forth in the PPA.  Accordingly, Mazuma is entitled to Progress

Payment Charges in the amount of $36,356.77 covering the period from June 1, 2006 to July 1,

2006, plus the amount of $477,656.40 [covering 390 days from July 1, 2006 to the date of this

Order, July 27, 2007] for a total of $514,013.17.

2.  State Sales Tax

Plaintiff also argues that Defendant is in default of an obligation to pay Illinois State

Sales Tax in the amount of $37,466.00 on property purchased in connection with the June 5,

2006 Progress Payment to the vendor CGT.

Defendant admits that it owes the $37,466, provided that it made Final Acceptance,

thereby commencing the MLA.  Defendant implies that no such sales tax would be owed under

the PPA.

The Court finds that the PPA is clear and unambiguous in stating that the "Lessee shall

assume and be responsible for all of Lessee's obligations with respect to such items of Property

---

[18]*Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).

[19]*Id.*

[20]*Id.*

as specified in the Lease."[21]  Under § 7 of the MLA, Defendant was clearly required to pay any taxes owing on the Property.  Additionally, the PPA provides, in part, that in the event that Final Acceptance is not made 90 days after the first Progress Payment, or if any term of the PPA is breached, the MLA, which is incorporated therein, a default of the MLA occurs.  Accordingly, the Court finds, as a matter of law, that Defendant owes the $37,466 outstanding in state sales taxes.

### 3.  Late Fees

Plaintiff seeks late charges in the amount of $3,716.22 under the MLA.  The MLA contains provisions which reference late fees,[22] which Plaintiff does not cite.  Upon the Court's review, such references do not explain how late fees are to be assessed.  Moreover, Plaintiff gives the Court no information, other than cursory affidavits, as to how it calculated the late fees here.  Accordingly, the Court declines to hold that Plaintiff is entitled to such amount as a matter of law.

### 4.  Attorneys' Fees

Plaintiff argues that it has incurred costs and fees to date in connection with this action in the amount of $11,606.10.  The PPA specifically provides that in the event of default, Defendant shall reimburse Plaintiff for all collection and enforcement costs, including attorneys' fees.  Plaintiff has provided an affidavit in support of its calculation of the fees.  Accordingly, the Court finds, as a matter of law, that Plaintiff is entitled to attorneys' fees in the amount of $11,606.10.

---

[21]PPA, at ¶ 3.

[22]*See, e.g.*, MLA at § 20(n).

5.  Defendant's Security Deposit

The parties appear to stipulate to the fact that Plaintiff is holding $218,864 in security deposits held for Defendant.  It is also undisputed that such deposits should be applied to the amounts owed by Defendant.

In short, this Court holds, as a matter of law that Defendant owes the following:

•      the entire amount of Progress Payments made or $875,455.40;

•      Progress Payment Charges in the amount of $514,013.17;

•      Illinois State Sales Tax in the amount of $37,466.00; and

•      Attorneys' fees in the amount of $11,606.10;

•      less the security deposit amount of $218,864.

D.  Third-Party Complaint

Mazuma argues that it is entitled to judgment as a matter of law on Defendant's Third-Party Complaint, which asserts that Mazuma failed to apply Defendant's payments as called for under the Agreements, thereby breaching the contract, and the implied duty of good faith and fair dealing.

As discussed above, the Court finds no basis for Defendant's claims that Mazuma breached the contracts at issue.  The Court is also convinced that no reasonable juror could return a verdict for Defendant on its claim for breach of the covenant of good faith and fair dealing.

"'Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injury the other party's right to receive the fruits of the contract.'"[23]  In this action, Defendant's rights to receive the

---

[23]*Brown v. Weis*, 871 P.2d 552, 564 (Utah Ct. App. 1994) (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199-200 (Utah 1991)).

fruits of the contracts at issue were precluded by its own failure to make Final Acceptance, and not by Mazuma's initial assertion, even if incorrect, of breach under the MLA.  Given the undisputed facts, no reasonable juror could find under the evidence presented on this Motion that Mazuma purposefully did anything to destroy or injure Defendant's rights under the contracts. Accordingly, the Court finds, as a matter of law, that Mazuma is entitled to judgment as to Defendant's claims.

### III.  CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Plaintiff's and Mazuma's Motion for Summary Judgment (Docket No. 16) is GRANTED IN PART.  It is further

ORDERED that Defendant, in breach of the contracts at issue, is required to pay the following to Plaintiff, as per the agreements:

- the entire amount of Progress Payments made or $875,455.40;

- Progress Payment Charges in the amount of $514,013.17;

- Illinois State Sales Tax in the amount of $37,466.00; and

- Attorneys' fees in the amount of $11,606.10;

- less the security deposit amount of $218,864.

for a total of $1,198,855.75.  Defendant is not require to pay any other late charges.  The Clerk of the Court shall close this case forthwith.

SO ORDERED.

DATED   July 27, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge